IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 16, 2013

## DAKOTA CISNEROS v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2008-B-1579, 2008-B-1580    Cheryl A. Blackburn, Judge**

_____

**No. M2012-00944-CCA-R3-PC - Filed March 26, 2013**

_____

The Petitioner, Dakota Cisneros, appeals the Davidson County Criminal Court's denial of his petition for post-conviction relief from his 2010 convictions upon guilty pleas for aggravated sexual battery and three counts of aggravated robbery and his effective twenty-four-year sentence.  On appeal, the Petitioner contends that the trial court erred by finding that his guilty pleas were knowing, voluntary, and intelligent.  We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., J., and PAUL G. SUMMERS, SR. J., joined.

Ryan C. Caldwell, Nashville, Tennessee, for the appellant, Dakota Cisneros.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; and Bret Thomas Gunn, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

According to the State's recitation of the facts in case number 2008-B-1580,

on January 19th, 2008, this defendant confronted Lori Parker in the parking lot of an apartment complex on Creekwood Drive, Nashville, Davidson County, Tennessee and took at gunpoint a number of personal items from her.  In the midst of doing so he also had unlawful sexual contact with her, touching her

breasts and reaching into her pants. . . . There was a fingerprint identification to him, and she also selected him from a photo lineup.

According to the State's recitation of the facts in case number 2008-B-1579,

as to count 1 . . . Mr. Marlon Burnett would testify that he identified defendant from a photo lineup as a person who robbed him at gunpoint at 3301 Creekwood Drive, which is in . . . Davidson County, Tennessee on November 17th, 2007.

In count 2 . . . on December 17th, 2007, a Mr. Beason . . . identified the defendant . . . as the person who robbed him at gunpoint at 3248 Vail View Drive. . . . Mr. Beason would have identified defendant. He saw his picture on television as the person being . . . arrested. So he didn't identify him from a photo lineup, which the other person in the other cases did. . . .

The Petitioner entered best interest guilty pleas in both cases. Case number 2008-B-1621 was dismissed pursuant to the plea agreement. The Defendant received concurrent eight-year sentences for the two counts of aggravated robbery in case number 2008-B-1579. The Defendant received twelve-year sentences for aggravated robbery and aggravated sexual battery in case number 2008-B-1580 to be served concurrently to the eight-year sentences but consecutively to each other.

At the post-conviction hearing, the Petitioner testified that counsel met with him to discuss his cases approximately five times, which occurred on the dates he was scheduled to appear in court. He said that counsel first told him that he faced eight to twelve years but that he received twenty years at the sentencing hearing. He did not recall counsel's reviewing the possible sentencing outcomes before the sentencing hearing. He said he thought he would receive an eight-year sentence, though he was not certain.

The Petitioner testified that counsel was not prepared for a trial and that counsel attempted to convince him to plead guilty by telling him that he would receive a lengthy sentence if convicted by a jury. He denied talking to counsel about possible defenses he might use at a trial. He said he pleaded guilty because counsel told him he would receive a longer sentence if he went to trial. He denied counsel's telling him that he was required to serve 100% of the aggravated sexual battery sentence. He did not recall the trial court's telling him before he pleaded guilty that he was required to serve 100% of the aggravated sexual battery sentence. He denied counsel's talking to him about becoming a registered sex offender after his release from confinement and said he did not recall the court's discussing the sex offender registry with him before he pleaded guilty.

-2-

The Petitioner testified that he thought counsel pressured him into pleading guilty and that he and counsel had disagreements. He said that counsel told him the State's plea offer, that they would have a trial if he did not accept the offer, and that he faced thirty to forty years if convicted at a trial. He said that before the sentencing hearing, counsel told him the trial court could order consecutive sentences.

The Petitioner testified that he could read "a little" and that he left school in the eleventh grade. He said that he was diagnosed with schizophrenia before his arrest and that counsel had him evaluated by a psychiatrist. He did not recall the trial court's asking if the Petitioner suffered from mental illness or disease. He stated that he thought counsel could have visited him more and ensured the Petitioner understood the plea agreement before he signed it. He said, "If I had a clue, I wouldn't have signed it."

On cross-examination, the Petitioner testified that he remembered a portion of the trial court's questions and his responses during the guilty plea hearing. He did not recall the court's discussing lifetime supervision, his telling the court that he and counsel discussed all possible sentencing outcomes, and his telling the court that counsel discussed the State's case against him. He recalled that counsel did not discuss with him the State's evidence against him. He denied telling the court that he was satisfied with counsel's representation and that counsel had done everything he could on the Petitioner's case. He agreed, though, that he told the truth to the best of his ability at the guilty plea hearing.

Upon examination by the trial court, the Petitioner testified that at the time of the post-conviction hearing he was taking Thorazine and Zyprexa and that he was taking the same medication when he entered his guilty pleas. He did not recall discussing his medication with the court at the guilty plea hearing. He said that he did not receive his medication daily from the Tennessee Department of Correction, that he was moved to the local jail pending the post-conviction hearing, that he had received his medication daily while at the local jail, and that his medication helped his memory. He agreed his memory problems might have resulted from his not taking his medication daily. He agreed that it was possible counsel did the things the Petitioner claimed counsel did not do and that the Petitioner forgot because of his medication.

Counsel testified that he had practiced law for ten years and that seventy-five to eighty percent of his practice was criminal defense. He said that he noticed the Petitioner had mental health issues and that after speaking with the Petitioner's family, he requested a mental health evaluation. He said the Petitioner began taking medication after the evaluation, which improved the Petitioner's abilities to communicate and to understand his surroundings. He said that although the Petitioner's three cases were complex, he "went to great lengths" to ensure the Petitioner understood what was happening.

Counsel testified that he met with the Petitioner "quite a bit" and recalled that he met with the Petitioner daily the week before he entered his guilty pleas. He said, though, that there was a period of time when he did not speak to the Petitioner often "because of the way these cases play out." He said he spent time interviewing the victims and other witnesses in the three cases. He concluded that an acquittal would have been difficult in the robbery charges. He said, though, that he thought the contact with the victim that led to the aggravated sexual battery charge was an effort to search for money, not for sexual gratification.

Counsel testified that before the guilty plea hearing, he and the Petitioner discussed the Petitioner's receiving lifetime community supervision, the substance of the charges, the possible sentences, and his serving 100% of the aggravated sexual battery sentence. He said he did everything the Petitioner requested with regard to preparing for a trial. He said the plea negotiations involved "a lot of back and forth" with the State. He said that before the trial date, the Petitioner understood that two people could identify him, that his palm print was found on a cigarette carton, and that his fingerprints were found inside one victim's car. He said the fingerprints inside the car corroborated the victim's statement. He said the Petitioner no longer wanted a trial once he understood the evidence against him. He said he had lengthy conversations with the Petitioner about the plea offer and the possible outcome at a trial to ensure the Petitioner understood his choices. He said he thought that he did everything he could to ensure the Petitioner understood his choices and that the Petitioner understood what was happening.

On cross-examination, counsel testified that he and the Petitioner discussed the charges against the Petitioner at the time he was appointed to the Petitioner's cases and that he believed the Petitioner understood the charges. He said that his discussions with the Petitioner were contentious at times because counsel did not always provide the Petitioner with favorable information. He said the Petitioner spoke periodically during their discussions. He said that with regard to plea negotiations, the Petitioner never said he would accept whatever counsel wanted and that the Petitioner told counsel to negotiate a better plea offer.

Counsel testified that he and an investigator interviewed the victim and other witnesses. He said he believed that the Petitioner understood the substance of the plea offer and the potential sentences he might receive at the sentencing hearing. He said that he did not appeal the sentence and that although he did not recall discussing an appeal with the Petitioner, he probably mentioned it. He said the Petitioner did not sign a written waiver of an appeal.

The trial court found that the guilty plea hearing transcript contradicted the Petitioner's contentions that counsel failed to defend his case adequately, failed to communicate about developments in his case, failed to investigate adequately, and applied undue pressure on him to accept the plea offer. The court credited counsel's testimony that he prepared for a trial and planned to establish that the Petitioner's touching the victim was an effort to locate money rather than an effort to seek sexual gratification. The court found that counsel met with the Petitioner on a regular basis and increased the frequency with which they met during the negotiation of the plea agreement and in the days leading to the trial date. The court found that counsel investigated the scene and interviewed the victims and witnesses.

The trial court found that the Petitioner entered knowing, voluntary, and intelligent guilty pleas. The court found that counsel "went to great lengths" to ensure that the Petitioner knew the consequences of his guilty pleas, including discussing community supervision for life, registering as a sex offender, and serving 100% of the aggravated sexual battery sentence. The court found that before the Petitioner entered his guilty pleas, counsel met with the Petitioner frequently to explain the consequences of his pleas. The court found that the Petitioner was evaluated by a mental health professional and that he was found competent. The court credited counsel's testimony that the Petitioner was focused and understood their conversations when he took his medications.

The trial court found that the guilty plea hearing transcript contradicted the Petitioner's contention that his guilty pleas were unknowing, involuntary, and unintelligent. The court found that the transcript showed a lengthy exchange between the Petitioner and the court, which included a discussion about lifetime supervision, the sex offender registry, the Petitioner's educational history, the Petitioner's mental health, and the court's discretion to order consecutive sentencing. The court concluded that the Petitioner entered knowing, voluntary, and intelligent guilty pleas. This appeal followed.

The Petitioner contends that the trial court erred by concluding that his guilty pleas were knowing and voluntary. He argues that because counsel failed to meet with him adequately, failed to review with him the possible sentencing outcomes, failed to prepare any defenses and for a trial, and failed to inform him that he was required to serve 100% of the aggravated sexual battery sentence, his guilty pleas were unknowing and involuntary. He also argues that his mental condition prevented his entering knowing and voluntary guilty pleas. The State responds that the trial court properly found that the Petitioner's guilty pleas were knowing and voluntary. We agree with the State.

The burden in a post-conviction proceeding is on the petitioner to prove his grounds for relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2012). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456-57 (Tenn. 2001). Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457. Post-conviction relief may only be given if a conviction or sentence is void or voidable because of a violation of a constitutional right. T.C.A. § 40-30-103 (2012).

The United States Supreme Court has held that a plea must represent a "voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31 (1970). The court reviewing the voluntariness of a guilty plea must look to the totality of the circumstances. See State v. Turner, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995). A plea resulting from ignorance, misunderstanding, coercion, inducement, or threats is not "voluntary." Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993). A petitioner's solemn declaration in open court that his or her plea is knowing and voluntary creates a formidable barrier in any subsequent collateral proceeding because these declarations "carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74 (1977).

We conclude that the Petitioner entered knowing, voluntary, and intelligent guilty pleas. Counsel's credited testimony was that he met with the Petitioner numerous times and that he increased his meetings with the Petitioner during plea negotiations and the time leading to the guilty plea hearing. The record reflects that counsel "went to great lengths" to ensure that the Petitioner understood the plea offer. Counsel investigated the Petitioner's case by interviewing the victims and other witnesses in each of the Petitioner's three cases. With regard to the aggravated sexual battery conviction, counsel thought the Petitioner's touching the victim was an effort to locate money, not for sexual gratification. Counsel was prepared to present this defense had the Petitioner rejected the offer. Counsel said that before the guilty plea hearing, he and the Petitioner discussed the substances of the charges, the possible sentencing outcomes, lifetime community supervision, and 100% service of the aggravated sexual battery sentence.

Counsel testified that two witnesses could identify the Petitioner, that his palm print was found on a cigarette carton, that his fingerprints were found inside one victim's car, and that the fingerprints inside the car corroborated the victim's statement. After learning the State's evidence, the Petitioner did not want a trial. Counsel had lengthy conversations with the Petitioner about the plea offer and the possible outcome at a trial to ensure the Petitioner

understood his choices. Counsel said that the Petitioner never said he would accept whatever counsel wanted and that the Petitioner told counsel to negotiate a better plea offer.

Likewise, the guilty plea hearing transcript contradicts the Petitioner's contentions. The guilty plea transcript shows that the trial court told the Petitioner that he was required to serve 100% of the aggravated sexual battery sentence. Counsel told the court that he and the Petitioner had discussed this, and the Petitioner told the court that he understood he was required to serve the entire sentence. With regard to the possible sentencing outcomes, the trial court asked the Petitioner if counsel reviewed each indictment and the possible punishments he might receive at the sentencing hearing, and the Petitioner said, "Yes." The Petitioner told the court that counsel discussed the possibility of consecutive sentencing. The Petitioner told the court that he and counsel reviewed the State's discovery package, the State's evidence against him, any available defenses, and any witnesses he might have called at a trial.

With regard to the Petitioner's mental health at the guilty plea hearing, the Petitioner told the trial court that he was taking Vistaril twice daily and Zyprexa at night and that he took his medication the night before and the morning of the hearing. When the court asked if the Petitioner understood what he was doing, the Petitioner said, "I believe so." He said that the medication made him understand "a little bit" better and that he understood what he was doing. The Petitioner stated that he was not being forced to plead guilty and agreed it was his choice. He said he was satisfied with counsel's work and thought counsel did everything possible on his behalf. He said that he signed his name to the guilty plea petitions after counsel reviewed and explained them. The Petitioner is not entitled to relief.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE